Chris M. Mason – 019891
cmason@jsslaw.com
**JENNINGS, STROUSS & SALMON, P.L.C.**
A Professional Limited Liability Company
One East Washington Street, Suite 1900
Phoenix, AZ 85004-2554
Telephone: (602) 262-5911

Michael L. Schwartz – 028365
Schwartz@schwartzlawfirmaz.com
**MICHAEL L. SCHWARTZ, PLLC**
7702 East Doubletree Ranch Road, Suite 300
Scottsdale, AZ 85258
Telephone: (480) 902-3055

*Attorneys for Defendants/Counterclaimants*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| JOANNE ZUNIGA, an individual, and DAVID M. REAVES, Chapter 7 Bankruptcy Trustee, | No. CV-15-1978-PHX-DKD |
| Plaintiffs, | **DEFENDANTS'/ COUNTERCLAIMANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** |
| vs. | |
| FIESTA PEDIATRIC THERAPY, INC., an Arizona corporation; BETH WILLIAMSON, an individual, and RANDY WILLIAMSON, her husband, | |
| Defendants. | |
| FIESTA PEDIATRIC THERAPY, INC., an Arizona corporation; BETH WILLIAMSON, an individual, and RANDY WILLIAMSON, her husband, | |
| Counterclaimants, | |
| vs. | |
| JOANNE ZUNIGA, an individual, and David Mr. Reaves, Chapter 7 Bankruptcy Trustee, | |
| Counterdefendants. | |

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1, Defendants/Counterclaimants, by and through undersigned counsel, hereby submit their Opposition to Plaintiffs' Motion for Summary Judgment.  .

5622466v1(65361.1)

I.   **PLAINTIFFS' FLSA OVERTIME CLAIM FAILS BECAUSE MS. ZUNIGA WAS PAID CONSISTENT WITH THE REQUIREMENTS FOR THE FWW RATE AND BECAUSE SHE WAS EXEMPT FROM OVERTIME.**

Plaintiffs have requested the Court to enter summary judgment, finding as a matter of law that Ms. Zuniga is entitled to prevail on her FLSA overtime claims. However, Ms. Zuniga is not entitled to any of the claimed overtime because: (a) she was paid properly in accordance with the FWW Method; and (b) she was exempt from overtime pursuant to the Administrative Exemption.   For these reasons, summary judgment should actually be entered in Defendants' favor.  These matters are addressed, in turn, below.

A.   Ms. Zuniga was Paid Properly in Accordance with the FWW Method.

As the Court is aware, the parties dispute whether the Fluctuating Work Week Method ("FWW Method") of pay applies in this case and whether it precludes Plaintiffs' claims of unpaid overtime.  Defendants raised the issue early in the case believing it was dispositive and irrefutable, while they reserved their remaining dispositive arguments for after the close of discovery. Obviously the FWW Method remains a crucial matter in dispute, still heavily argued by the parties.  Instead of simply repeating the Defendants' arguments raised in their Motion for Summary Judgment, which is incorporated herein by reference, Defendants offer another way of considering the matter that they hope may shed light on the proper functioning of the FWW Method of pay.

Specifically, to better understand the FWW Method, we should compare a companion doctrine recognized on the same day by the Supreme Court, namely the *Belo* doctrine.  On June 8, 1942, the Supreme Court decided two companion cases, both involving FLSA overtime pay, namely the *Missel* case and the *Belo* case.  In these two similar, but very different, case decisions, the Supreme Court outlined two salary-based methods for compensating non-exempt employees consistent with the FLSA that do not require the payment of traditional overtime at the rate of one and one-half times the regular rate.  *See Overnight Motor Transp. Co. v. Missel*, 316 U.S.

572 (1942); *Walling v A.H. Belo Corp.*, 316 U.S. 624, 62 S. Ct. 1223 (1942).  The employer rights recognized in both of these cases remain intact to this day.  But it is the distinctions between these two methods of using salaries to compensate non-exempt employees for their overtime that highlights why Fiesta complied with the Supreme Court's requirements set forth in *Missel*.

To understand *Missel* (establishing the FWW Method) and *Belo* (establishing Belo Plans) we must first dispense with traditional, but mistaken, views of the FLSA's overtime requirement.  The perspective that an employer must pay additional overtime pay at one and one-half the base rate any time an exempt employee works past 40 hours in a workweek is a common misconception and oversimplification.  *Belo* proves that this is not always required.  Similarly, *Missel* only requires a half-time rate when an employee works beyond 40 hours in a workweek.  Over 70 years ago, the Supreme Court put the notion to rest that an employer may only comply with overtime requirements by issuing additional pay.

What the Supreme Court recognized in both *Missel* and *Belo* is the fact that employers can capture overtime in the base salary that it sets.  Through *Belo*, an employer can all but eliminate traditional overtime pay, hence the more rigorous requirements for *Belo* plans, and through *Missel* an employer can limit overtime pay to as little as a half-time rate, hence its less rigorous requirements.

To explain, as the Court has already been briefed extensively on *Missel*, we address *Belo*.  Through the *Belo* decision, the Supreme Court ruled that an employer may capture intended overtime up to 60 hours in a workweek through a flat, established, weekly salary for non-exempt employees, with no additional overtime payments whatsoever.  Thus, where an employer complies with the requirements in *Belo*, it may pay a non-exempt employee the same base salary from week to week without paying any additional overtime, even if the employee works 45, 50, or even 55 hours in a workweek.  This, of course, dashes the common misconception that employers must always pay additional pay any time a non-exempt employee works more than 40 hours in a workweek.

Given that the salary basis for providing implicit overtime pay could seriously impact the potential for overtime pay, there are numerous limits to *Belo* plans.  First, for *Belo* plans, the employee's workweeks must involve irregular hours that are difficult to anticipate and, <u>expressly</u>, must fluctuate below 40 hours on occasion.  Second, the plan only applies if the employee works less than 60 hours – traditional overtime pay must be added when an employee works beyond this cap.  Third, both the employer and the employee must expressly agree to the *Belo* plan.  It need not be in writing, but it must be agreed to.[1]  29 C.F.R. §§ 778.402 & 778.406.

As we can see from the distinctions above, the requirements under *Missel* and *Belo* are quite different, yet illuminate their intended differences.  *Belo* was designed to permit an employer to capture the entirety of overtime pay through an established weekly salary.  Conversely, *Missel* recognized that an employer can meet overtime requirements that include both a salary (which captures the 1 of the 1.5 times for an overtime rate) plus at least a half-time addition for overtime.  Yet, it is the rigor applicable to *Belo* plans that may have mislead some courts to believe the same standards apply to the FWW Method approved in *Missel*.

The vast majority, and correctly-reasoned, case decisions have not conflated the FWW Method authorized by *Missel* with the more rigorous requirements applicable to *Belo* plans.  These courts have ruled that an employee's workweek need never fluctuate below 40 for the FWW Method to apply.  *See*, *e.g.*, *Urnikis-Negro v. American Fam. Prop. Servs.*, 616 F.3d 665, 683-84 (7th Cir. 2010); *Condo v. Sysco Corp.*, 1 F.3d 599, 605 (7th Cir. 1993); *Aiken v. County of Hampton*, 1998 WL 957458 at *3 (4th Cir. 1998); *Yadev v. Coleman Oldsmobile, Inc.*, 538 F.2d 1206, 1207-08 (5th Cir. 1976); *Hasan v. GPM Investments, LLC*, 896 F. Supp. 2d 145, 150 (D. Conn. 2012); *Mitchell v. Abercrombie & Fitch, Co.*, 428 F. Supp. 2d 725, 734

---

[1] Following the Supreme Court's decision in Belo, Congress modified the FLSA, specifically by adopting Section 7(f), to incorporate the decision into the statutory framework.

(S.D. Ohio 2006); *Newsom v. NPC Inter.*, 2003 WL 23849758 at*4 (W.D. Tenn. 2003).

Mandating that some workweeks drop below 40 hours is a requirement for *Belo* plans.  This is not, and has never been, a requirement for the FWW Method, either as articulated by the Supreme Court or in any opinion letter or regulation imposed by the DOL, or by any circuit court.

B.     Ms. Zuniga was Exempt from Overtime Under the FLSA.

Plaintiff was exempt from overtime under one of the FLSA's "white collar exemptions" – namely the Administrative Exemption.   Under the Administrative Exemption, an employee is exempt from overtime if he or she is paid a salary at not less than $455 per week and performs the duties that qualify someone for the exemption.  The individual's duties must be the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers and the primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.   If Plaintiff's duties met this requirement, she has no claim to overtime.  *See* 29 C.F.R. § 541.205(a).

For purposes of the exemption, the term "directly related to management or general business operations" means work directly related to assisting with the running or servicing of the business, as opposed to production.  The individual is considered to exercise discretion and independent judgment in these areas if the individual has authority to make independent choice, free from immediate direction. The fact that an employee's decisions are revised or reversed after review does not mean that the individual does not exercise discretion and independent judgment.  So long as the individual exercises judgment at the time, he or she meets the requirements.

While working for Fiesta, Plaintiff was in charge of scheduling and handled 99.9% of the scheduling work, and acted as the de facto office manager when her sister, Ms. Singh, was out of the office.  (Defendants' SOF, ¶¶ 3 & 24.)  Ms.

Zuniga's job as Scheduler and when acting as the office manager inherently was designed for the "running or servicing of the business."

Plaintiffs role as the Scheduler relied upon independent judgment – she needed to determine patient needs from their therapy histories, determine the particularized skills and availability of each individual therapist, evaluate authorized insurance and medical coverage to determine what therapies would be authorized and how frequently appointments could be scheduled based on provider.  (Defendants' SOF, ¶¶ 18-25; Defendants' Controverting SOF, ¶¶ D11-D16.)  She had a bevy of options to choose from in selecting therapists and schedules, and made the unilateral decisions with respect to each.  (Defendants' SOF, ¶ 25; Defendants' Controverting SOF, ¶¶ D11-D17.)  She would then set the schedules for the therapists' sessions with their patients.  (Defendants' SOF, ¶ 25; Defendants' Controverting SOF, ¶¶ D15-D16.)  In other words, Scheduling involved much more than mere assignment of patient to a particular date – if, indeed, that is all that was involved, we are left to scratch our heads over why Plaintiff took so many overtime hours.  Plaintiff's work was crucial to the success of Fiesta.  Without it, there would have been no business, no clients, and no income.

Similar work has been deemed exempt by other courts.  For instance, one court recognized that an employee "responsible for scheduling the delivery of materials to the plant" performed exempt work under the Administrative Exemption.  *Schreckenbach v. Tenaris Coiled Tubes, LLC*, 2013 WL 178126 at *2 & 9-10 (S.D. Tex. 2013).  The Seventh Circuit has ruled that "work planners" who planned and scheduled equipment repairs for the plant where they worked fell within the Administrative Exemption.  *Kennedy v. Commonwealth Edison Co.*, 410 F.3d 365, 372-75 (7th Cir. 2005). Similarly, the Sixth Circuit determined that "planners" who received job orders, scheduled repairs, prepared work packages and distributed those packages to the actual work crews were exempt under the Administrative Exemption.  *See Renfro v. Indiana Mich. Power Co*., 370 F.3d 512, 515, 517-19 (6th Cir. 2004).

Moreover, Plaintiff was left to her own devices to decide how to schedule.

There was no Fiesta manual, no handbook, and no specific guidelines.  (Defendants' Controverting SOF, ¶ D17.)  Ms. Zuniga has generically asserted that she followed some undefined instructions, but she has never elaborated on them, nor has she identified anything that qualifies as such.  Regardless of the vague nature of her assertions, other courts have recognized that the mere following of requirements does not strip exemption from the job.  For instance, in Renfro, the "planners" followed very explicit, very-detailed, regulations for their work, which the Sixth Circuit ruled did not strip them of the type of discretion intended for the exemption.  *Renfro*, 370 F.3d at 519 ("We disagree with the planner's argument that the heavily-regulated nature of their primary job duty prohibits their exercise of discretion and independent judgment."); *accord Kennedy v. Commonweatlh Edison Co.*, 410 F.3d 365, 374 (7th Cir. 2005).

Plaintiff has claimed at times that Dr. Williamson has authority to override her decisions, but according to Dr. Williamson, this rarely happened.  (Defendants' Controverting SOF, ¶ D18.)   And, as previously indicated, the fact that an employee's decisions are subject to revision or reversal after review does not mean that the individual does not exercise discretion and independent judgment in the first place.   *See*, *e.g.*, *Kennedy v. Commonweatlh Edison Co.*, 410 F.3d at 374; *Schreckenbach v. Tenaris Coild Tubes, LLC*, 2013 WL 178126 at *7 (S.D. Tex. 2013) ("If final decision-making authority were the test for determining whether a person was an executive or administrative employee, few would ever qualify as such an employee under the regulations.").

A crucial aspect for of the Administrative Exemption is determining whether the work is "production" versus "servicing."  The job of "production" employees is "to generate (i.e. 'produce') the very product or service that the employer's business offers to the public."  *Renfro*, 370 F.3d at 517-18 (internal quotations omitted).  For Fiesta, this is the actual therapy work performed by Fiesta's therapists.  The servicing – i.e. the scheduling – performed by Plaintiff was of the type contemplated by the Administrative Exemption.  *See id.*

(1)    Ms. Zuniga was paid on a salary basis.

As with the FWW Method of pay, the Administrative Exemption requires that Ms. Zuniga be paid on a salary basis.  The Department of Labor specifies that an employee is paid on a "salary basis" for purposes of this requirement "if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed."   29 CFR § 541.602(a).   As previously articulated, and supported by case law, the label "salary" is not required anywhere in this definition. The question is whether Ms. Zuniga received a pre-determined amount as her base every pay period, which she did.  Fiesta never dropped below that amount.  She therefore received a "salary."

(2)    The Ninth Circuit has expressly recognized that docking an employee's leave bank does not defeat the salary basis test.

For purposes of determining whether Ms. Zuniga was properly paid on a salary basis, the Ninth Circuit has already ruled that it is irrelevant whether a PTO / vacation pool bank was docked for absences.  *Barner v. City of Novato*, 17 F.3d 1256, 1261-62 (9th Cir. 1994) (holding that the use of the words "amount" and "compensation" in DOL regulations refers to "cash" or "salary" not personal or vacation time for purposes of defeating salary basis test when there are deductions from accrued vacation pools).

## II.    PLAINTIFFS' VARIOUS REQUESTS FOR SUMMARY JUDGMENT ON SECONDARY ISSUES GOVERNING THE NUANCES OF PLAINTIFFS' FLSA CLAIM SHOULD BE DENIED.

Plaintiffs also request the Court to enter summary judgment in their favor on a variety of issue secondary to the central disputes in this case, but the law does not support their contentions or requests.   Specifically, Plaintiffs request summary judgment finding: (a) that her claims are governed by the three-year limitations period applicable to willful violations; (b) that she should be awarded liquidated

damages; (c) that Dr. Williamson should be held personally liable for the alleged FLSA violation; (d) that Dr. Williamson's ex-husband, Randy Williamson, should be held personally liable for the alleged FLSA violation; and (e) that a sum certain award should be entered in her favor.  Not only are these requests unfounded, they misstate the applicable facts and law.  Indeed, summary judgment on each of these issues should be entered in Defendants' favor.  Each of Plaintiffs' requests is addressed, in turn, below.

A.   Plaintiff's Claims are Governed by a Two-Year Limitations Period.

Claims under the FLSA are presumptively governed by a two-year limitations period.  29 U.S.C. § 255(a).  This period may be extended to three years if the Plaintiff proves that Defendants committed a "willful violation," that is that the employer knew it was in violation of the FLSA or showed reckless disregard for its obligations.  *See McLaughlin v. Richard Shoe Co.*, 486 U.S. 128, 134, 108 S. Ct. 1677, 1682, 100 L. Ed. 2d 115 (1988); *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 125-30, 105 S. Ct. 613, 623-26, 83 L. Ed. 2d 523 (1985).  In setting this standard, the Supreme Court expressly rejected a lesser standard of culpability.  *Id.*, 486 U.S. at 132-33, 108 S. Ct. at 1680-81.  The Court found that Congress, in requiring the "willful violation" standard, intended a meaningful distinction between higher culpability and ordinary violations.  *Id.*  "Ordinary violations of the FLSA are subject to the general 2-year statute of limitations." *Id.*, 486 U.S. at 134, 108 S. Ct. at 1682.

Plaintiff bears the burden of proving willfulness.  *Nelson v. Waste Mgmt. of Alameda County, Inc.*, 33 Fed. Appx. 273, 274 (9th Cir. 2002); *Juvera v. Salcido*, 2013 WL 6628039 at * (D. Ariz. 2013).  Mere ordinary negligence is not enough to meet this requirement.  *Id.*  In fact, "[i]f an employer acts unreasonably, but not recklessly" under the FLSA, its action is not willful.  *McLaughlin*, 486 U.S. at 135 n.13, 108 S. Ct. at 1683 n.13.

Ms. Zuniga argues that the three-year limitation period applies and therefore

extends her claims back to August 12, 2012.[2]   But Ms. Zuniga cannot meet her burden of proof.   Dr. Williamson believed that Fiesta was properly paying Ms. Zuniga in compliance with the FLSA, and believed that Ms. Zuniga's sister, of all people, would not intentionally underpay Ms. Zuniga.   Ms. Zuniga's responsibilities as Scheduler demonstrate that she was exempt from overtime.   (Defendants' Controverting SOF, ¶¶ D11-D17.)   And the very generous pay plan given to Ms. Zuniga, by which she received a guaranteed base salary regardless of whether she worked a full 40 hours per week, plus overtime pay at her straight-time equivalent, shows good faith.  (Defendants SOF, ¶¶ 28, 34-36, 38-39, 46-49.)

Argument between the parties in this case over application of the FWW Method turns on a number of disagreements between the courts, with Plaintiff citing the minority views.   In disputes involving "close questions of law and fact" or involving "a case of first impression" concerning application of certain aspects of the FLSA, many courts have ruled that an employer's FLSA violation inherently is not willful.  *See*, *e.g.*, *Reich v. Gateway Press, Inc.*, 13 F.3d 685, 702-03 (3rd Cir. 1994); *accord Reich v. Newspapers of N.E., Inc.*, 44 F.3d 1060, 1080 & n.18 (1st Cir. 1995); *EEOC v. Westinghouse Elec. Corp.*, 869 F.2d 696, 713 (3rd Cir. 1989) ("While stubborn non-compliance in the face of contrary judicial authority might well constitute willfulness, good-faith adherence to, and defense of, those policies when the law is unsettled does not establish a willful violation."); *Callahan v. City of Sanger*, 2015 WL 2455419 at *13 (E.D. Cal. 2015); *Gonzalez v. Bustleton Servs., Inc.*, 2010 WL 1813487 at *14 (E.D. Penn. 2010) ("When an employer is simply mistaken about the requirements of the FLSA, courts generally find that such a violation is negligent rather than willful."); *Hanscom v. Carteret Mortgage Corp.*, 2008 WL 4845832 at *4 (M.D. Penn. 2008) ("When the defendant shows that he reasonably believed he was complying with the existing FLSA law, summary judgment for the employer is appropriate on the issue of willfulness.").

---

[2] Ms. Zuniga filed her original Complaint in this matter on August 12, 2015.

1    Ms. Zuniga nonetheless claims that Dr. Williamson intentionally deprived her
2    of full overtime pay to save money, which is not only untrue, but completely illogical
3    given Ms. Zuniga's simultaneous pay bump.  Ms. Zuniga received a tremendous pay
4    bump when she was transitioned to salary.  (Defendants' SOF, ¶ 34.)  If Dr.
5    Williamson was so concerned about the few thousand dollars per year that would
6    accrue in the added half-time overtime pay, why increase Ms. Zuniga's pay rate
7    which resulted in an additional $3,265.60 per year in direct pay?[3]  And we should not
8    overlook the indirect costs to Fiesta with the transition.  Ms. Zuniga was guaranteed
9    pay the equivalent of 40 hours per week regardless of whether she worked it.
10   Additionally, Ms. Zuniga's overtime rate, whether at half-time, straight-time, or one
11   and one-half times, was higher with the pay bump from $16.50 per hour to $18.07
12   per hour.  Ms. Zuniga's claim that Dr. Williamson was a penny-pincher simply does
     not add up.

13       Perhaps recognizing the inherent discrepancy in her claim, Ms. Zuniga turns
14   to the argument that Dr. Williamson somehow acted irresponsibly in having Ms.
15   Singh, who was new, make the changes.  Yet, this again conflates the facts.  Dr.
16   Williamson did not instruct Ms. Singh to make the changes, nor did she even know
17   about them when they took place.  (Defendants' SOF, ¶ 43; Defendants'
18   Controverting SOF, ¶¶ 16-22.)  Ms. Singh took it upon herself to make the changes
19   and later informed Dr. Williamson about them.  (Defendants' Controverting SOF, ¶
20   16.)  Dr. Williamson, consumed with other responsibilities, which sometimes reached
21   80 hours per week, relied on her Practice Manager to make intelligent, informed,
22   decisions about pay for the administrative staff.  (Defendants' Controverting SOF, ¶¶
23   101.)   Dr. Williamson did not rely upon an unseasoned Practice Manager, as
24   Plaintiff's argument goes, to make any changes because Dr. Williamson neither
25
26
     _____
27       [3] This computation is derived by multiplying $1.57 (the difference between
     the $16.50 per hour she was making previously and the $18.07 hour equivalent she
28   was making after the pay bump in February of 2011), times 40 hours per week, times
     52 weeks.

approved nor was aware of them at the time.[4]

Because Plaintiff has not met her burden of proof, summary judgment should be granted in Defendants' favor as to the applicable limitations period.

B.    Liquidated Damages are Unjustified.

Liquidated damages are awarded in cases where a violation of the FLSA is found, unless the employer demonstrates that it acted "in good faith and . . . had reasonable grounds for believing that [its] act or omission was not a violation of the [FLSA]." 29 U.S.C. § 260.  Plaintiffs miscite Ninth Circuit precedent in quoting the *Alvarez* 3-part test, which applies exclusively to application of the good faith based on the reliance on legal authority defense under § 259, not § 260.  *Alvarez v. IBP, Inc.*, 339 F.3d 894, 907 (9th Cir. 2003).   Defendants have not asserted a § 259 defense.

The proper legal test for evaluation of the § 260 good faith defense under Ninth Circuit law is expressed in *Chao v. A-One Med. Servs., Inc.*, 346 F.3d 908, 921 (9th Cir. 2003).  As set forth by the Ninth Circuit, "[c]ourts have the discretion to deny an award of liquidated damages if the employer shows that it acted in subjective good faith and had objectively 'reasonable grounds' for believing that its conduct did not violate the FLSA."  *Id.*  This includes both a subjective and an objective element.  As expressed by Dr. Williamson, she subjectively believed that Fiesta was acting in accordance with the FLSA.  (Defendants' Controverting SOF, ¶¶ 93-94.) Objectively, the fact that a base salary plus overtime was paid – regardless of how

---

[4] Plaintiff essentially argues that Dr. Williamson relied on a brand new Practice Manager to make these types of changes, but is in error for two reasons. First, as explained above, Dr. Williamson was unaware that Ms. Singh was making these changes at the time.  Second, Plaintiff's confuse the record by suggesting that the information Dr. Williamson relied on in originally hiring Ms. Singh was the same information she relied on in promoting Ms. Singh.  As the record reflects, Plaintiff's counsel asked Dr. Williamson what she relied on when hiring Ms. Singh (Ms. Singh was originally hired as a part-time biller), but did not ask what Dr. Williamson relied on in promoting Ms. Singh to Practice Manager.  (Defendants' Controverting SOF, ¶¶ 99 & D1.)

1   one may feel about formal application of the FWW Method – demonstrates objective

2   good faith.

3         C.     <u>Dr. Williamson is not Personally Liable for the Decision of Fiesta's Practice Manager</u>.

4         Dr. Williamson did not make the pay decision at issue and did not exercise the

5   control over Ms. Zuniga's pay, as envisioned by the Ninth Circuit, needed to assume

6   personal FLSA liability.  The Ninth Circuit has recognized that an individual – be it a

7   supervisor, an owner, or otherwise – may potentially be held personally liable for an

8   FLSA violation, but only if he or she "exercise[d] control over the nature and

9   structure of the employment relationship" with the plaintiff.  *Boucher v. Shaw*, 572

10  F.3d 1087, 1090-91 (9th Cir. 2009).   Our analysis of this must include the

11  "circumstances of the whole activity," including the "economic reality" of the

12  employment relationship.  *Id.* at 1091.  The Ninth Circuit applies four factors, known

13  as the "*Bonnette* test," to determine whether an employment relationship exists

14  between the plaintiff and the individual owner or supervisor, namely, whether the

15  individual: (1) had the power to hire and fire employees; (2) supervised and

16  controlled employee work schedules or conditions of employment; (3) determined

17  the rate and method of payment; and (4) maintained employment records.  *Bonnette*

18  *v. Cal. Health and Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983).

19        Here, Dr. Williamson only meets the first of the four factors and, even as to

20  that factor, while she had the power to hire and fire administrative staff, she did not

21  exercise it as she left it to the sound decision-making of the Practice Manager.

22  (Defendants' Controverting SOF, ¶ 93.)  Dr. Williamson did not supervise or control

23  the work schedules or employment conditions for administrative staff.  (Defendants'

24  Controverting SOF, ¶ 93.)  She did not determine their rate or pay or method of

25  payment.   (Defendants' Controverting SOF, ¶ 93.)   Nor did she maintain the

26  employment records – these were maintained by the Practice Manager, who was also

27  responsible for inputting pay into the Fiesta payroll system.  (Defendants'

28  Controverting SOF, ¶ D4)

Moreover, as inherent in and consistent with the four-part *Bonnette* test, the individual held financially responsible for the alleged FLSA violation also should have been the person responsible for it. *See*, *e.g.*, *Baystate Alternative Staffing, Inc. v. Herman*, 163 F.3d 668, 678-79 (1st Cir. 1998). When evaluating individual liability under the FLSA, "courts pay particular attention to whether the corporate officer's duties made him or her principally in charge of directing employment practices such that [he or she] was instrumental in causing the corporation to violate the FLSA." *Solis v. Velocity Express, Inc.*, 2010 WL 2990293 at *5 (D. Or. 2010). "In the absence of a direct relationship between the corporate officers' decisions and the FLSA violation at issue, courts have found that corporate officers . . . did not become FLSA employers simply by virtue of their general authority over the company as a whole." *Id.*; *accord Vasto v. Credico (USA) LLC*, 2016 WL 4147241 at *8 (S.D.N.Y. 2016)*; Driver v. Appleillinois, LLC*, 2012 WL 4175010 at *5 (N.D. Ill. 2012) ("The issue is not whether an individual controlled every aspect of the employees' conduct, but rather, whether the individual had control over the alleged violation of the statute."); *Smith v. Cheesecake Factory Rest., Inc.*, 2010 WL 441562 at *13 (M.D. Tenn. 2010).

In this case, Dr. Williamson did not exercise control over the pay and direction of the Fiesta administrative staff. (Defendants' Controverting SOF, ¶¶ 93-94.) That was left to Fiesta's Practice Manager. (Defendants' Controverting SOF, ¶¶ 93-94.) Nor was Dr. Williamson responsible for the restructuring of Ms. Zuniga's pay in 2011 – that decision was reached exclusively by Ms. Singh, without Dr. Williamson's involvement, or even knowledge, at the time. (Defendants' Controverting SOF, ¶ 16.) For these reasons, Dr. Williamson is not personally liable under the FLSA for the challenged pay decision in dispute between the parties.

D.   <u>Randy Williamson Similarly is not Personally Liable and Summary Judgment Should be Entered in his Favor</u>.

Although Plaintiff requests that summary judgment be entered directly against Randy Williamson (Motion, p. 13), she provides no explanation and no legal support

for her request.  There is no basis for it.  Dr. Williamson and Randy Williamson divorced years ago.  (Defendants' Controverting SOF, ¶ D10.)  Fiesta has always been Dr. Williamson's sole and separate property.  (Defendants' Controverting SOF, ¶¶ D6 & D10.)  Randy Williamson was never employed by Fiesta, he exercised no control over pay, scheduling, hiring and firing, or any other aspect of the operation evaluated for personal liability, as discussed in the section above.  (Defendants' Controverting SOF, ¶¶ D7 & D8.)  He had nothing to do with the pay plan that applied to Ms. Zuniga.

Plaintiff presumably will suggest that Randy Williamson should be held vicariously liable for obligations of his ex-wife and her business, but there is no justification, legal or otherwise, for imposing any obligation on him.  Mr. Williamson never owned Fiesta.  (Defendants' Controverting SOF, ¶¶ D6 & D10.)  It was never a community asset.  (Defendants' Controverting SOF, ¶¶ D6 & D10.)  Consequently, he should not be held liable for its operations or decision-making relating to the pay of a single employee.  Certainly Plaintiff has not met her burden of justifying a claim against him and, for that reason, summary judgment should be entered in his favor.

E.    Plaintiff's Purported Damages Computation is Erroneous.

Plaintiffs' constantly-roving damages computation has created countless challenges in this case, not the least of which is the fact that even now she seeks more than is supported by the theories in her Amended Complaint.  Notably, Plaintiffs originally demanded $17,610.21 in alleged unpaid overtime, plus an additional liquidated amount, totaling $35,220.42 in demanded compensation, plus attorneys' fees and costs.  (Amended Complaint, Doc. #14, Prayer for Relief, ¶¶ A & B.)  Plaintiffs' legal counsel continued to push these errant computations despite repeated written notice, and even computation spreadsheets, that undersigned counsel sent them.  While it is a relief Plaintiffs have finally gone back and more accurately computed the disputed amounts, they still overstate matters.

Plaintiffs, at least in their MSJ, incorrectly contend that there is $8,394.73 in claimed back overtime, if the 3-year limitations period applies, and only $6,348.43 if

the 2-year period is applied.  (Plaintiffs' MSJ, p. 12.)  However, this contradicts Plaintiffs' repeated concessions in pleadings and in open court that the most she sought was $7,805.73 in alleged unpaid overtime if the 3-year period applied. (Plaintiffs' Response to Defendants' Motion to Dismiss, Doc. #22, at p. 4.) Something obviously is still amiss with her latest computations.

After re-computing Ms. Zuniga's claim of back overtime and admitting to the Court that there was only $7,805.73 in overtime in dispute, Plaintiffs have since added in a new legal theory not supported by their Amended Complaint.  Plaintiffs raise the fact that Fiesta withheld part of Ms. Zuniga's compensation to pay back a loan, which somehow allegedly violates the FLSA.  (Plaintiffs' MSJ, at p. 11; Plaintiffs' SOF ¶ 74.)  This new legal theory is completely unsupported by the allegations in the Amended Complaint and, therefore, it is barred.  *Cf. Crawford v. Gould*, 56 F.3d 1162, 1168-69 (9th Cir. 1995) (finding that the court lacks authority to enter summary judgment on any issue not properly pled).

Moreover, there is no dispute that Ms. Zuniga received the loan amount, and merely agreed to repay it through reductions in overtime pay.  (Plaintiff's SOF, ¶¶ 66 & 69.)  There is nothing remotely wrong or unlawful with the arrangement.  The key is that she received the pay up front (like an advance) which she then paid down through work hours.  She signed an agreement for the arrangement, and personally tracked the hours associated with paying down the money she owed.  (Plaintiff's SOF, ¶¶ 66 & 69.)  She received the pay – she merely received it before she did the work, rather than after.  She is merely trying to get paid twice (and get liquidated damages on top of it) for pay she already received.

The FLSA permits pay deductions to recoup a loan, including a loan to a third-party.  29 CFR § 531.40 ("Where an employer is directed by a voluntary assignment or order of his employee to pay a sum for the benefit of the employee to a creditor, done, or other third party, deduction form the wages of the actual sum so paid is not prohibited."); W & H Opinion Letter, FLSA2004-19NA (Oct. 8, 2004) ("It has been our longstanding position that where an employer makes a loan or an

advance of wages to an employee, the principal may be deducted from the employee's earnings even if such deduction cuts into the minimum wage or overtime pay due the employee under the FLSA."); *Brennan v. Veterans Cleaning Serv., Inc.*, 482 F.2d 1362, 1369 (5th Cir. 1973) ("An employer may also count as wages any sums paid to a third party at the request of the employee. The payment by the employer to the third party is equivalent to a loan to the employee, or an advance against his salary. Accordingly, deductions to recoup the outlay may be counted as wages."); *Chen v. Cayman Arts, Inc.*, 757 F. Supp. 2d 1294, 1300-01 (S.D. Fla. 2010); *Vazquez v. Tri-State Mgmt. Co., Inc.*, 2002 WL 58718 at *4-5 (N.D. Ill. 2002).

Were we to back out the loan amount of $1,178 in Ms. Zuniga's overtime pay computations, her claim would be reduced to $7,216.73 (for a 3-year period) and $5,170.43 (for a 2-year period).

## III. IN LIGHT OF MS. ZUNIGA'S ADMITTED THEFT OF COMPANY RECORDS, SUMMARY JUDGMENT ON FIESTA'S COUNTERCLAIMS SHOULD BE AWARDED TO FIESTA, NOT MS. ZUNIGA.

As detailed more fully in Defendants' Motion for Summary Judgment, Ms. Zuniga admitted to stealing Company records. While she disputes the precise types and amount, she acknowledges stealing patient records to support a supposed claim that Fiesta had engaged in fraudulent patient billing. The contention is absurd, and those inside the company know precisely how absurd, making it clear to them that she really was acting in a vindictive manner to assert a patently false claim, which ultimately went nowhere and was rejected by the State. (Defendants' Controverting SOF, ¶ 125.) Regardless, the evidence demonstrates that Fiesta's claims are valid and warrant judgment in Fiesta's favor.

### A. Zuniga violated the CFAA and Summary Judgment Should be Entered in Fiesta's Favor as to the Claim.

As articulated in Defendant's Motion for Summary Judgment, and incorporated herein by reference, Ms. Zuniga violated the Computer Fraud and Abuse Act ("CFAA") and summary judgment should be granted in Fiesta's favor.

Ms. Zuniga openly acknowledges that she accessed Fiesta's computers and printed HIPPA-protected patient records for her own purposes – to push a false and malicious allegation of billing fraud against Fiesta. (Defendants' SOF, ¶¶ 103-111.) She also clearly accessed Fiesta's payroll records – which meant accessing a system she had no authority to access – and printed off earnings statements shortly before her departure from Fiesta. (Defendants' SOF, ¶¶ 97-102; Defendants Controverting SOF, ¶ 129.)

Ms. Zuniga attempts to defend against the CFAA claim in part by asserting that Fiesta has not proven at least $5,000 in damages, but she cites the wrong statutory subsection for her assertion. (Plaintiffs' MSJ, p. 15.) Under the CFAA, there are several independent bases for pursuing civil recovery, only one of which is in the case of harm resulting in at least $5,000 in damages. Another cause of action arises from an offense that causes "the modification or impairment, or potential modification or impairment, of the medical examination, diagnosis, treatment, or care of 1 or more individuals." 18 U.S.C. §1030(c)(4)(A)(i)(II). This subsection does not require proof of any damages, let alone $5,000 in damages. Fiesta has demonstrated that Ms. Zuniga's acts impaired the treatment of 1 or more individuals and, consequently, summary judgment should be entered in Fiesta's favor.

Ms. Zuniga also contends that her impermissible access was permitted because she had general authorization to access Fiesta's systems, which overlooks several important points. First, Ms. Zuniga had no authorization to access Fiesta's payroll systems, and the evidence indicates that she accessed Fiesta's payroll system to print off her earnings statements shortly before her departure from Fiesta. (Defendants' SOF, ¶¶ 97-102.) Second, Ms. Zuniga accessed patient records beyond the scope of her normal authorization, namely patient treatment notes. (Defendants' SOF, ¶¶ 110.) Third, she had no authorization to print HIPAA-protected patient records for removal from Fiesta premises. (Defendants' SOF, ¶ 109.)

As to the third point, there is a significant split of authority that the parties have brought to the Court's attention, with the Ninth Circuit the only apparent circuit

to find that an employee's improper use of information does not qualify as "exceeding authorized access" under the CFAA. *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127 (9th Cir. 2009). The split between the circuit courts certainly calls for Supreme Court resolution. However, there is a significant difference between the records in *Brekka* and those accessed and printed in this case. These were HIPAA-protected records. They should never have been removed from Fiesta. Ms. Zuniga's mass printing of HIPAA-protected records for removal exceeded her authorized access.[5]

> B.  Ms. Zuniga Breached her Duty of Loyalty and Summary Judgment Should be Entered in Fiesta's Favor as to the Claim and as to Fiesta's Misappropriation Claim.

Ms. Zuniga breached her duty of loyalty by stealing Fiesta records, indeed, HIPPA-protected patient records, as briefed in Defendant's Motion for Summary Judgment, which is incorporated herein by reference. Ms. Zuniga contends that an employee's duty of loyalty may be compromised when the employee is engaged in whistleblowing activity. There is no basis for the assertion under Arizona law. Plaintiffs cite to the Arizona Employment Protection Act for the proposition that an employee may engage in whistleblowing, but there is nothing therein that remotely suggests that an employee may steal records and still protect his or her job position, nor a single Arizona case supporting that proposition. Other courts, when evaluating protected activity under a variety of other employment laws, have routinely held that that protected activity does not extend to theft of an employer's records – whistleblowing activity loses its protection when it involves theft. *See*, *e.g.*, *O'Day v. McDonnell Douglas Helicopter Co.*, 79 F.3d 756, (9th Cir. 1996) (employee's theft of personnel records to preserve evidence for his planned discrimination lawsuit was not protected and ruling that the employee "committed a serious breach of trust, not

---

[5] Plaintiffs have repeatedly asserted that Ms. Zuniga took the records because she was purportedly a "whistleblower," when in reality she was merely seeking to pursue a vindictive agenda against Dr. Williamson. Regardless, the CFAA does not recognize a "whistleblower" exception.

only in rummaging through his supervisor's office for confidential documents, but also in copying those documents and showing them to a co-worker . . . [l]ike any employer, McDonnell Douglas has a strong interest in . . . discouraging this sort of behavior); *Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, (6th Cir. 2008) (employee's disclosure of confidential documents related to discrimination claim was not protected activity under Title VII and, therefore, employer's termination of employee was not unlawful).

Ms. Zuniga therefore cites out-of-state authority to further her argument, but her cited cases are inapposite and, more importantly do not apply or analyze Arizona law, Arizona causes of action, or breach of the duty of loyalty claims generally. (Plaintiffs' MSJ, at pp. 19-20.)   All three cases cited concerned the individual's contractual obligations – under specific non-disclosure agreements – to return documents in their possession.  None of the cases dealt with an employee's wholesale theft of an employer's records.

Notably, the Ninth Circuit has expressly rejected an employee's argument that theft of her employer's records to support a whistleblower claim shields her from liability for her theft.  *Cafasso v. General Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1062 (9th Cir. 2011).  Instead, the Ninth Circuit affirmed the district court's grant of summary judgment in favor of the employer's breach of contract claim (the contract prohibited unauthorized use of the employer's records).  *Id.*

Ms. Zuniga's motivations – whether to truly vindicate a public interest or to engage in vindictive misconduct – does not shield her from the consequences of her thefts.   She stole the records, thereby breaching her duty of loyalty and misappropriating Fiesta's property.  Summary judgment should be entered in Fiesta's favor as to the claims.

C.     Fiesta has Adequately Identified its Damages.

As an initial matter, Fiesta primarily seeks nominal damages for the harms

that it suffered, which is its right.[6]   There can be no dispute that Ms. Zuniga took records – she admits as much.  She merely disputes the quantum and type that she pilfered.   Regardless, the quantifiable economic damages that Fiesta experienced solely from the theft are difficult to measure and, indeed, may cost more to compute than the economic computation might total, which is why Fiesta proceeds primarily on a nominal damages theory.[7]

Nominal damages are available for the taking of Fiesta's records under established long-established Arizona law.  *Scott v. Allstate Ins. Co.*, 27 Ariz. App. 236, 240 n.1 (Ct. App. 1976); *Babbitt & Cowden Live Stock Co. v. Hooker*, 28 Ariz. 263 (1925) ("Even in the absence of any evidence as to value, plaintiff would have been entitled to nominal damages for the conversion.").  The case that Plaintiffs cite and purport to quote for the proposition that nominal damages are unavailable not only does not support their argument, it does not even include the purported quoted language that they attribute to it.  (*See* Plaintiff's MSJ at p. 20, purporting to quote *John E. Shaffer Enters. v. City of Yuma*, 183 Ariz. 428, 904 P.2d 1252, 1256 (Ariz. App. 1995).)  Any argument that nominal damages are unavailable under Arizona law for the taking of property not only overlooks precedent, but Arizona's Constitution which prohibits any such limitation – "The right of action to recover damages for injuries shall never be abrogated."  (Ariz. Const. Art. 18, §6.)

Similarly, nominal damages are not prohibited by the CFAA, despite Plaintiff's errant citation to the contrary.  The provision that Plaintiff cites – 18 U.S.C. § 1030(g) – only limits damages to "economic damages" for a certain type of

---

[6] Only Fiesta pursues counterclaims in this matter.  Dr. Williamson originally did, but then withdrew them and filed them in a separate legal action.  The remaining claims have been pled in favor of Fiesta only.

[7] References in Defendants' disclosure statements to recovery for emotional distress damages are in error – Defendants do not seek recovery for emotional distress damages.  The mistaken references to emotional distress damages derive from Dr. Williamson's claims lodged earlier in the case for Ms. Zuniga's various defamation-related torts, and were inadvertently copied into later iterations of the disclosure statement.  Those claims were removed from Defendants' amended counterclaims and are no longer a part of the case.

violation, namely a violation involving $5,000 or more in damages.  However, there are several other types of violations.  Those other types of violations are not limited to "economic damages," including the type of violation under which Fiesta seeks recovery, namely a violation that impairs the treatment of a patient.  See 18 U.S.C. § 1030(c)(4)(A)(i)(II).[8]

What Plaintiff also overlooks is that Fiesta seeks injunctive relief in this matter, namely return of its records.  This has been pled as part of its Counterclaims, and it has every right to seek this relief.  Certainly injunctive relief is appropriate to remedy the misappropriation, and is available under the CFAA.  18 U.S.C. § 1030(g).

As for attorneys' fees, Defendants seek them, but not under the FLSA. Defendants have properly pled and asserted those claims in its disclosure statement, including under applicable statutory provisions.

RESPECTFULLY SUBMITTED this 20th day of April, 2017.

**JENNINGS, STROUSS & SALMON, P.L.C.**

By */s/ Chris M. Mason*
    Chris M. Mason
    One East Washington St., Suite 1900
    Phoenix, AZ  85004-2554
    *Attorneys for Defendants/Counterclaimants*

**MICHAEL L. SCHWARTZ, PLLC**

By */s/ Michael L. Schwartz*
    Michael L. Schwartz
    7702 East Doubletree Ranch Road.
    Suite 300
    Scottsdale, AZ  85258
    *Attorneys for Defendants/Counterclaimants*

---

[8] Section 1030(g) specifically provides that "[d]amages for a violation involving <u>only</u> conduct described in subsection (c)(4)(A)(i)(I) [violations involving $5,000 or more in harm] are limited to economic damages."  (Emphasis added.)  This provision notably does not preclude other types damages, including nominal damages, for violations involving subsection (c)(4)(A)(i)(II), namely those that impair patient treatment.

1

**CERTIFICATE OF SERVICE**

2
3
    I hereby certify that on April 20, 2017, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

4   • Kraig J. Marton: kjm@jaburgwilk.com

5   • Jeffrey A. Silence: jxs@jaburgwilk.com

6   • Michael L. Schwartz: Schwartz@schwartzlawfirmaz.com

7
8
    I further certify that on April 20, 2017, I put in the U.S. Mail a paper courtesy copy of the foregoing document and the Notice of Electronic Filing to the assigned Judge.

9

10                                              */s/Kathrine A. Roberts*
11                                              Kathrine A. Roberts

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28